UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DARIEN HOUSTON,                    )
                                   )
                 Petitioner,       )
                                   )
v.                                 )      Nos.    1:13-CR-102-CLC-SKL-1
                                   )              1:15-CV-270-CLC
UNITED STATES OF AMERICA,          )
                                   )
                 Respondent.       )

# M E M O R A N D U M

This case is before the Court upon a pro se motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 [Doc. 61] filed by Darien Houston ("Petitioner"). Petitioner also has

filed two separate motions for leave to supplement his original § 2255 motion to add new claims

challenging his enhanced sentence as an armed career criminal under the Armed Career Criminal

Act ("ACCA"), 18 U.S.C. § 924(e), pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015)

[Docs. 68 and 71].[1]

Petitioner's motions for leave to supplement his § 2255 motion to add *Johnson* claims

[Docs. 68 and 71] will be **GRANTED**, and the Court has considered those claims along with the

claims raised in his original § 2255 motion. For the following reasons, however, the Court finds

that Petitioner is *not* entitled to § 2255 relief on any claim. Accordingly, Petitioner's § 2255

motion [Doc. 61], as amended to include the supplemental *Johnson* claims, will be **DENIED**.

Finally, Petitioner's motion for release from custody on bail [Doc. 72] also will be **DENIED**.

---

[1]  The Supreme Court has determined that *Johnson*, which invalidated the residual clause
of the ACCA as unconstitutionally vague, announced a new "substantive rule that has retroactive
effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016); *see
also In Re Watkins*, 810 F.3d 375, 381-85 (6th Cir. 2015).

# I.    PROCEDURAL HISTORY

## A.    Underlying Criminal Proceedings and Direct Review

On September 24, 2013, Petitioner was charged in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) [Doc. 8]. Petitioner pled guilty to Count One on January 16, 2014 [Docs. 33, 35, 36].

A presentence investigation report ("PSIR") prepared prior to sentencing identified three prior felony convictions of either a violent felony or a serious drug offense that qualified Petitioner as an armed career criminal under the ACCA: (1) a June 11, 1990, conviction for second degree burglary in the Hamilton County, Tennessee, Criminal Court [PSIR ¶ 33]; (2) a September 17, 1998, conviction for possession of cocaine for resale in the Hamilton County, Tennessee, Criminal Court [PSIR ¶ 37]; and (3) a September 17, 1998, conviction for possession of cocaine for resale in the Hamilton County, Tennessee, Criminal Court  [PSIR ¶ 39].[2] As an armed career criminal, Petitioner was subject to a statutory mandatory minimum sentence of 15 years to a maximum of life and his advisory guideline sentencing range under the United States Sentencing Guidelines ("USSG") was 180 to 210 months [PSIR ¶¶ 85, 86].

---

[2] The ACCA requires three previous convictions committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). The Sixth Circuit has held that crimes that a defendant commits against different victims, in different places, and at different times, will generally be separate offenses. *United States v. Hockenberry*, 730 F.3d 645, 667 (6th Cir. 2013) (*quoting United States v. McCauley*, 548 F.3d 440, 448 (6th Cir. 2008)). Thus, "even when convictions 'were sentenced on the same day, they count separately for purposes of calculating an ACCA enhancement.'" *Id.* (*quoting United States v. Kearney*, 675 F.3d 571, 575 n. 5 (6th Cir. 2012)). Here, Petitioner committed the offense of possession of cocaine for resale on two separate occasions, August 9, 1997 [PSIR ¶ 37], and February 24, 1998 [PSIR ¶ 39], and thus they count as two separate convictions for ACCA purposes, even though he was sentenced for both offenses on September 17, 1998.

On May 1, 2014, Petitioner was sentenced to a term of imprisonment of 180 months [Doc. 52]. Petitioner appealed the denial of a suppression motion and the Sixth Circuit Court of Appeals affirmed on March 9, 2015 [Doc. 58].

### B.    Post-Conviction Proceedings

On October 1, 2015, Petitioner filed a pro se § 2255 motion raising two grounds for relief: (1) counsel was ineffective for failing to object to Petitioner's armed career criminal status on the ground that his two prior convictions for possession of cocaine for resale are not punishable by a maximum term of imprisonment of ten years or more; and, (2) counsel was ineffective for failing to argue that the Court engaged in improper fact-finding when it designated Petitioner an armed career criminal [Docs. 61, 62]. The government filed a response in opposition to Petitioner's § 2255 motion [Doc. 65] and Petitioner filed a reply [Doc. 67].

On June 29, 2016, Petitioner filed a motion for leave to supplement his § 2255 motion pursuant to Federal Rule of Civil Procedure 15(d) in order to raise an entirely new claim alleging that his prior conviction for second-degree burglary no longer qualifies as a conviction for a violent felony under the ACCA in light of *Johnson* [Doc. 68].[3] The government filed a response in

---

[3]  Although captioned as a motion to "supplement," Petitioner's motion more accurately is to be construed as a motion to amend his § 2255 motion, since it seeks to add an entirely new claim challenging his armed career criminal status under *Johnson* to his original pleading. *See Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007) (holding that a Rule 15(a) motion for leave to amend, not a Rule 15(d) motion to supplement, is the appropriate mechanism through which a party may assert additional claims for relief); *see also United States v. Hicks*, 283 F.3d 380, 385–86 (D.C. Cir. 2002) (holding that intervening judicial decisions are not the sort of "occurrences or events" to which Rule 15(d) refers and that "the appropriate bases for supplemental pleadings are new facts bearing on the relationship between the parties, rather than merely changes in law governing those facts"). Accordingly, the Court will treat Petitioner's motion as a motion for leave to amend his § 2255 motion.

opposition arguing that Petitioner is not entitled to *Johnson* relief [Doc. 69], to which Petitioner filed a reply [Doc. 70].

On October 11, 2016, Petitioner filed a second motion to supplement his § 2255 motion seeking to add yet another new claim to his original § 2255 motion, this one alleging that his prior convictions for possession of cocaine for resale no longer qualify as convictions for a serious drug offense under the ACCA in light of *Johnson* and *Mathis v. United States*, 136 S. Ct. 2243 (2016) [Doc. 71].[4] Petitioner subsequently filed a motion for release from custody on bail [Doc. 72], arguing that he is entitled to sentencing relief in light of the *en banc* decision of the Sixth Circuit Court of Appeals in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) *cert. granted* 138 S. Ct. 1592 (2018).

## II.    TIMELINESS

### A.    Applicable Law

Section 2255(f) places a one-year period of limitation on all petitions for collateral relief under § 2255 which runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).

---

[4] Again, the Court will treat Petitioner's motion as a motion for leave to amend his § 2255 motion to add a new claim.  *Ghee*, 498 F.3d at 386.

The Supreme Court has held that the one-year limitation period set forth in § 2255(f) is not jurisdictional, *Day v. McDonough*, 547 U.S. 198, 205 (2006), and thus may be subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Moreover, the failure to comply with a statute of limitations is an affirmative defense which must be asserted and can be waived. *Scott v. Collins*, 286 F.3d 923, 927–28 (6th Cir. 2002) (*abrogated on other grounds by Day*, 547 U.S. at 208–09).

### B.      Petitioner's Original § 2255 motion

Petitioner's conviction in this case was affirmed on direct review by the Sixth Circuit Court of Appeals on March 9, 2015, and became final ninety days later when the time for filing a petition for a writ of certiorari in the United States Supreme Court expired on June 7, 2015. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"). Thus, the one-year period of limitation set forth in § 2255(f)(1) began on June 8, 2015, and ran until June 8, 2016. Petitioner's initial § 2255 motion was filed on October 1, 2015, well within the one-year limitations period.

### C.      Petitioner's First Motion to Amend

Petitioner's first motion for leave to amend his original § 2255 motion seeks to add to his § 2255 motion a new claim under *Johnson* [Doc. 68]. An attempt to raise a new claim for relief in a motion to amend is subject to the one-year statute of limitations set forth in § 2255(f), *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008), and "'a party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.'" *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016) (*quoting United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)). "Consequently, a Rule 15 motion will be denied where it is filed after that period

expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)(2)." *Howard*, 533 at 475–76.

Petitioner's first motion for leave to amend to add a *Johnson* claim was filed on June 25, 2016, beyond the one-year limitations period set forth in § 2255(f)(1).[5]  However, claims based on the Supreme Court's opinion in *Johnson* satisfy the third sub-category of § 2255(f)—that is, the assertion of a newly recognized right made retroactively applicable to cases on collateral review. *Welch*, 136 S. Ct. at 1268; *In Re Watkins*, 810 F.3d at 381–85.  The one-year limitation period for filing a motion to vacate based on a right newly recognized by the Supreme Court runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactively applicable.  *Dodd v. United States*, 545 U.S. 353, 357 (2005).  Accordingly, *Johnson* triggered a renewed one-year period of limitation beginning on the date of that decision, June 26, 2015, and running until June 26, 2016.

Petitioner's first motion to amend his § 2255 motion to raise a *Johnson* claim, filed on June 25, 2016, falls just within the one-year window for requesting collateral relief under *Johnson*. Accordingly, Petitioner's first motion for leave to amend [Doc. 68] will be **granted**, and the Court will consider on the merits the *Johnson* claim raised therein.

---

[5] Although not entered on the docket until June 29, 2016, Petitioner's motion certifies that it was delivered to prison authorities for mailing on June 25, 2016, in accordance with the mailbox rule articulated in *Houston v. Lack*, 487 U.S. 266 (1988) [Doc. 68 p. 5].  The Sixth Circuit has applied the prison mailbox rule to various pro se prisoner mailings, including motions for relief under 28 U.S.C. § 2255.  *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999); *see also* Rule 3(d) of the Rules Governing Section 2255 Proceedings ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing").  Absent contrary evidence, the Sixth Circuit accepts the date on which a prisoner signs a paper under penalty of perjury as the date the prisoner handed over the paper to prison officials for mailing.  *Towns*, 190 F.3d at 469; *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

### D.      Petitioner's Second Motion to Amend

Petitioner's second motion to amend his § 2255 motion seeks to raise a new claim alleging that his prior convictions for possession of cocaine for resale no longer qualify as ACCA predicate convictions in light of *Johnson* and *Mathis* [Doc. 71].  This motion, however, was not filed until October 11, 2016, nearly four months beyond the expiration of the renewed one-year limitation period under § 2255(f)(3) triggered by *Johnson*.  Nor can Petitioner rely on *Mathis*, decided on June 23, 2016, to trigger another one-year period under § 2255(f)(3), because *Mathis* did not announce a new rule of constitutional law that has been made retroactive by the Supreme Court. *See United States v. Conzelmann*, 872 F.3d 375, 376–77 (6th Cir. 2017).

Accordingly, the new claim Petitioner wishes to raise may be considered only if it relates back to the claims raised in his timely § 2255 motion as initially filed within the meaning of Rule 15(c).  Relation back under Rule 15(c) is in order when the petition as initially filed and the proposed amendment to that petition state claims that are "tied to the same common core of operative facts." *Mayle*, 545 U.S. at 664.

Here, Petitioner's proposed new claim, which seeks to challenge the use of his prior convictions for possession of cocaine for resale as predicate armed career criminal offenses, arguably relates back to the claim in his initial § 2255 motion alleging that his counsel was ineffective for not challenging those same convictions, albeit on different grounds.  Because the new claim and the original claim arguably are united through a "common core of operative facts," and because the government has not asserted the failure to comply with the statute of limitations as an affirmative defense, Petitioner's second motion for leave to amend [Doc. 71] will be **granted** and the Court also will consider on the merits the new claim raised in that motion.

## III.    MERITS ANALYSIS

### A.    Hearing

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, the Court, after a review of the answer, the transcripts and records of prior proceedings and any other submitted materials, is to determine whether an evidentiary hearing is required.  A district court must hold an evidentiary hearing unless the motion, files, and record conclusively show that the petitioner is entitled to no relief.  28 U.S.C. § 2255(b); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  Here, upon review of the motions, memoranda, responses and the record, the Court finds that an evidentiary hearing is not required because the record conclusively shows that Petitioner is not entitled to relief as a matter of law on any of his claims.  *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (evidentiary hearing on motion to vacate sentence is not required to resolve purely legal issues).

### B.    Standard of Review

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *McPhearson v. United States*, 675 F.3d 553, 558–59 (6th Cir. 2012) (*quoting Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### C.     Discussion

#### 1.     Ineffective Assistance of Counsel Claims

Petitioner's original § 2255 motion raises two claims of ineffective assistance of counsel based on: (1) counsel's failure to object to Petitioner's armed career criminal status on the ground that his two prior convictions for possession of cocaine for resale are not punishable by a maximum term of imprisonment of ten years or more [Doc. 62 pp. 1–13]; and (2) counsel's failure to argue that the Court engaged in improper fact-finding when it designated Petitioner an armed career criminal  [Doc. 62 pp. 14–24].

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987).  First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise.  *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (holding the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).  If a petitioner fails to prove that he sustained

prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

### a.  Failure to Challenge Armed Career Criminal Status

The first claim raised by Petitioner in his initial § 2255 motion is that his counsel was ineffective for failing to object to Petitioner's armed career criminal status on the ground that his two prior convictions for possession of cocaine for resale are not punishable by a maximum term of imprisonment of ten years or more [Doc. 62 pp. 1–13].  Specifically, he contends that because he was classified under Tennessee sentencing law as a Range I standard offender, with no aggravating factors present, the maximum sentence to which he was subject was the presumptive sentence at the low end of the applicable sentence range, which is eight years.  He further argues that since his prior offenses therefore were not punishable by a maximum term of imprisonment of ten years or more, they do not qualify as convictions for a serious drug offense within the meaning of the ACCA, and his counsel was ineffective in failing to challenge the ACCA enhancement on this ground.  Petitioner's argument is without merit.

The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  Whether "an offense under State law" is a "serious drug offense" must be determined by consulting the "maximum term of imprisonment" applicable to a defendant's previous drug offense at the time of that defendant's state conviction for that offense.

*McNeill v. United States*, 563 U.S. 816, 820 (2011). At the time Petitioner committed his offenses, sentencing in Tennessee was governed by the Criminal Sentencing Reform Act of 1989.

Under Tennessee law, both now and at the time of the commission of Petitioner's offenses in 1997 and 1998, Tennessee sentencing courts are required to (1) determine the felony class of the crime of conviction, (2) determine what sentencing range applies (*i.e.*, Range I, II, or III), and (3) apply these findings to the sentencing provisions of Tennessee Code § 40–35–112 to arrive at a sentence range. *United States v. Brown*, 516 F. App'x 461, 466 (6th Cir. 2013).

Here, the offense of possession of 0.5 grams or more of cocaine for resale is a Class B felony. Tenn. Code Ann. §§ 39-17-417(a)-(c)(1), 40-35-110. Generally, the authorized term of imprisonment for a Class B felony is not less than eight nor more than thirty years. Tenn. Code Ann. § 40-35-111(b)(2). However, for a "standard offender"[6] falling within Range I of the Tennessee sentencing scheme, the sentence range for a Class B felony is not less than eight nor more than twelve years. Tenn. Code Ann. § 40-35-112(a)(2). The Criminal Sentencing Reform Act of 1989 set a presumptive sentence for a Class B felony as the minimum of the applicable sentence range (*i.e.*, eight years for a standard offender) if no enhancement or mitigating factors are present, and contained a rule that absent an enhancement factor, "a judge may not impose a sentence that exceeds the presumptive sentence at the bottom of the range." *See State v. Bise*, 380 S.W. 3d 682, 692, 698 (Tenn. 2012).[7]

---

[6] A "standard offender" is a defendant who is not sentenced as a multiple offender, a persistent offender, a career offender, an especially mitigated offender or a repeat violent offender. Tenn. Code Ann. § 40-35-105(a). The sentence for a standard offender is within Range I. Tenn. Code Ann. § 40-35-105(b).

[7] In 2005, the Tennessee sentencing statutes were amended to eliminate mandatory presumptive sentences, to provide that enhancement factors are advisory and to give a sentencing judge discretion to sentence within a sentencing range in order to bring the state sentencing scheme into compliance with *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*,

Petitioner contends that because the sentencing judge found no enhancement factors applicable, the "maximum term of imprisonment" to which he was subject for ACCA purposes was the presumptive sentence at the low end of the applicable sentence range, or eight years. The government argues, however, that the maximum term of imprisonment prescribed by law for Petitioner's offense of possession of cocaine for resale is not more than thirty years, the statutory maximum for a Class B felony. Upon review of the applicable law, the Court concludes that neither party is correct and that the maximum term of imprisonment prescribed by law for Petitioner's offense in this case is not more than twelve years under Tenn. Code Ann. § 40-35-112(a)(2).

The Court's analysis begins with *United States v. Rodriquez*, 553 U.S. 377, 393 (2008), in which the Supreme Court held that the maximum term of imprisonment, for purposes of determining whether a prior offense qualifies as a serious drug offense under the ACCA, must be determined with reference to any applicable recidivist enhancements for the prior offense. Looking at the plain text of the statute and the key terms "offense," "law," and "maximum term," the Court determined that the relevant "law" was set forth in both the provision prescribing punishment for the offense and the provision prescribing punishment for a second or subsequent offense, and concluded that "a straightforward application of the language of the ACCA" leads to the conclusion that the maximum term of imprisonment prescribed by law may be increased by state recidivism provisions. *Id.* at 383.

---

543 U.S. 220 (2005). *See Bise*, 380 S.W. 2d at 696. In light of the 2005 amendments, the Tennessee sentencing law now "encounters no Sixth Amendment shoal." *Cunningham v. California*, 549 U.S. 280, 294 n.18 (2007).

Importantly, *Rodriquez* recognizes that only applicable recidivist enhancements are to be considered in determining the maximum term of imprisonment. *Id*. at 389 ("In those cases in which the records that may be properly consulted do not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense"). In *United States v. Pruitt*, 545 F.3d 416, 422–23 (6th Cir. 2008), the Sixth Circuit, in construing a North Carolina sentencing scheme to determine whether the offense was "punishable by a term of imprisonment for a term exceeding one year" for career offender purposes under the United States Sentencing Guidelines, found that "a defendant's criminal history has a significant effect on the maximum sentence authorized." In so finding, the Sixth Circuit cited *Rodriquez* as persuasive authority, particularly noting that the Supreme Court had indicated its understanding that a "recidivism enhancement can be accounted for in determining the 'maximum term of imprisonment' under the ACCA only if the particular defendant was subject to the enhancement." *Id*. at 423

Applying *Rodriquez* and *Pruitt* to the Tennessee sentencing scheme leads to the conclusion that the maximum term of imprisonment for Petitioner's offense of conviction is twelve years under § 40-35-112(a)(2), the maximum term authorized for a standard offender with no criminal history, and not thirty years under § 40-35-111(b)(2), the maximum authorized for any Class B felony. The Tennessee Criminal Sentencing Reform Act of 1989 "'create[d] a matrix by which convicted criminal defendants [were] sentenced based upon the seriousness of the crime committed and the number of prior convictions the defendant ha[d].'" *Bise*, 380 S.W.2d at 691 (*quoting State v. Carter*, 254 S.W.2d 335, 342 (Tenn. 2008)). Under that system, the statutory maximum of thirty years for a Grade B felony applies only to defendants who qualify either as

13

persistent offenders or career offenders based on their prior criminal histories and who therefore fall within Range III. *See* Tenn. Code Ann. §§ 40-35-107, 40-35-108.

In essence, the maximum term of thirty years authorized by § 40-35-111(b)(2) is a recidivist enhancement applicable only to those with significant criminal histories as determined under the Tennessee sentencing regime. As such, that thirty-year maximum cannot apply to Petitioner because he was a standard offender with no criminal history. Because *Rodriquez* instructs that the "maximum term of imprisonment" for ACCA purposes includes only *applicable* recidivist enhancements, it does not include provisions applying only to persistent and career offenders. Instead, the "maximum term of imprisonment prescribed by law" for Petitioner's offense is not more than 12 years, the punishment authorized for a defendant convicted of a Class B felony with no prior criminal history.

As noted, the Tennessee Criminal Sentencing Reform Act of 1989 set a presumptive sentence for a Class B felony as the minimum of the applicable sentence range (*i.e.*, eight years for a standard offender) if no enhancement or mitigating factors were present. Petitioner argues that because the sentencing court found no enhancement factors present, the presumptive sentence of eight years is the "maximum term of imprisonment" to which he was subjected for ACCA purposes. In support he cites several cases from the Fourth Circuit Court of Appeals which have held that it is not permissible to apply hypothetical enhancements to a presumptive sentence and that the maximum term of imprisonment prescribed by law is the maximum possible sentence that a particular defendant could have received. *See United States v. Newbold*, 791 F.3d 455 (4th Cir. 2015); *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011).

The Court is not persuaded. As an initial matter, the cases relied on by Petitioner are from our sister circuit and are not binding on this Court. Moreover, Sixth Circuit precedent does not

support Petitioner's position. While the Sixth Circuit has held that when the maximum sentence authorized by state law for a given offense depends at least in part on the defendant's criminal history, the Court must consider the prior record level of the individual defendant—rather than that of a hypothetical defendant with a worse prior record level—in determining whether the prior conviction is one that is punishable by a term of imprisonment exceeding one year, *Pruitt*, 545 F.3d at 422–24; it has "rejected the . . . argument that this individualized analysis should apply to other aggravating factors." *United States v. Bates*, No. 17-5228, 2017 WL 5564676 (6th Cir. Nov. 2017) (citing *Pruitt,* 545 F.3d at 421-22).

In *Pruitt*, the Sixth Circuit rejected Petitioner's argument that because there were no aggravating factors present, he could not have been sentenced within the aggravated range set forth in the North Carolina statute, but could only have received the presumptive sentence at the bottom of the range. Instead, the court determined that, because under North Carolina law the defendant *could have* faced those factors, the *top* of the aggravated range served as the maximum the offense was "punishable by" under the career offender guidelines. *Id*. at 421. Similarly, in *Bates*, the Sixth Circuit found that under the Arizona statutory scheme at issue, which set a presumptive sentence which could be exceeded only when certain aggravated factors were found, the defendant's offense was "punishable by" the maximum in the range of punishment the defendant *could have* received had aggravated factors been present. 2017 WL 5564676 at * 3–4.

Like the North Carolina and Arizona schemes at issue in *Pruitt* and *Bates*, respectively, the Tennessee sentencing scheme under which Petitioner was sentenced provided a presumptive sentence of eight years that *could have* been exceeded had certain aggravated factors been found, up to the maximum sentence of twelve years. Because the statute permitted the Court to sentence within that range provided that certain enhancement factors set forth in § 40-35-114 were present,

the "maximum term of imprisonment prescribed by law" for Petitioner's offense was twelve years, the top of the authorized range for a standard offender. Although the sentencing court found no enhancement factors present in Petitioner's case, it could have, which would have enabled it to sentence Petitioner up to the maximum term of the sentence range of twelve months prescribed by § 40-35-112(a)(2).

Because Petitioner's prior Tennessee convictions for possession of cocaine for resale are convictions for offenses "for which a maximum term of imprisonment of ten years or more is prescribed by law," they qualify as "serious drug offenses" within the meaning of the ACCA. Thus, even assuming without finding that counsel's failure to raise this argument was deficient under *Strickland*, Petitioner can show no prejudice from his counsel's failure to do so. Accordingly, Petitioner is not entitled to relief on this ineffective assistance of counsel claim.

### b. Failure to Object to Improper Judicial Fact-Finding

The second claim raised by Petitioner in his initial § 2255 motion is that his counsel was ineffective in failing to argue that the Court engaged in improper fact-finding when it designated him an armed career criminal. Specifically, he contends that the enhanced mandatory minimum sentence required by the ACCA is unconstitutional because the Court, rather than a jury, assessed the number and nature of his prior convictions, and that his counsel failed to object on this basis despite Petitioner's request for him to do so. This argument is without merit.

In *Almendarez-Torres v. United States*, 523 U.S. 224, 239–47 (1998), the Supreme Court held that a prior conviction may be introduced at sentencing to enhance statutory punishment without offending a defendant's constitutional rights. Two years later, the Supreme Court held that, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a

reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 446 (2000) (emphasis added); *see also Booker v. United States*, 543 U.S. 220, 244 (2005) (reiterating that the fact of a prior conviction is exempt from the general rule that all penalty-enhancing facts must be presented to a jury and proven beyond a reasonable doubt).

Thus, "a judge is permitted to find, based on the preponderance of the evidence, the fact of a prior conviction." *United States v. Martin*, 526 F.3d 926, 941 (6th Cir. 2008) (citing *Almendarez–Torres*). In line with *Almendarez–Torres*, previous convictions under the ACCA are treated as sentence enhancements, not offense elements. *United States v. McMurray*, 653 F.3d 367, 371 (6th Cir. 2011) ("That the ACCA is a sentence enhancement rather than a separate offense is well established").

Petitioner acknowledges *Almendarez–Torres* but insists it was wrongly decided. However, "*Almendarez–Torres* is still good law and will remain so until the Supreme Court explicitly overrules it." *United States v. Anderson*, 695 F.3d 390, 398 (6th Cir. 2012). Because Petitioner's requested objection to the application of the ACCA on the basis of improper judicial fact-finding would have been denied, counsel cannot be faulted for having failed to raise it. *See*, *e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel cannot be held constitutionally ineffective for failing to raise a meritless objection). Accordingly, Petitioner is not entitled to relief on this ineffective assistance of counsel claim.

### 2. *Johnson-Mathis* Claim: Violent Felony

Petitioner's next claim is that his prior Tennessee conviction for second-degree burglary no longer qualifies as a "violent felony" under § 924(e) in light of *Johnson* and that without it, he lacks the requisite three predicate convictions necessary to subject him to an ACCA enhancement [Docs. 68, 70]. This claim is without merit.

17

A felon who possesses a firearm normally faces a maximum penalty of ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, if that felon possesses the firearm after having sustained three prior convictions "for a violent felony or serious drug offense, or both," the ACCA requires a fifteen year minimum sentence, 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or, (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In *Johnson*, the Supreme Court determined that the residual clause of the ACCA is unconstitutionally vague and concluded "that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. *Johnson* did not automatically invalidate all ACCA sentences, however, emphasizing that its holding "d[id] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.*; *see also United States v. Kemmerling*, 612 F. App'x 373, 376 (6th Cir. 2015) (explicitly finding that *Johnson* did not affect the ACCA's use-of-physical-force clause). Thus, under *Johnson*, an ACCA sentence only raises due process concerns, and thus is invalid, if it necessarily was based on predicate violent felonies that qualified as such only under the ACCA's residual clause.

Here, post-*Johnson* Petitioner's conviction for second-degree burglary remains a "violent felony" under the enumerated offense clause of the ACCA. For purposes of § 924(e), the Supreme Court defines "burglary" as any conviction, "regardless of its exact definition or label, having the

18

basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). At the time that Petitioner committed his offense, Tennessee defined second-degree burglary as the "breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging . . . by day, with intent to commit a crime" Tenn. Code Ann. § 39-3-403 (1982); *State v. Moore*, 614 S.W.2d 348, 351 (Tenn. 1981). This definition categorically aligns with *Taylor*'s generic definition of burglary under the ACCA, and, therefore, Petitioner's conviction under that statute continues to qualify as a conviction for a violent felony under the ACCA's enumerated-offense clause. *See United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012) (holding that pre-1989 Tennessee second-degree burglary qualifies as generic burglary, *i.e.*, a violent felony under the enumerated-offense clause).

Nor does *Mathis* alter this conclusion. In *Mathis*, the Supreme Court held that a prior conviction cannot qualify as a generic form of a predicate violent felony if a locational element of that crime is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the offense. 136 S. Ct. at 2257. Unlike the Iowa statute at issue in *Mathis*, however, the Tennessee statute at issue here did not contain any "alternate ways of satisfying a single locational element" that fall outside *Taylor*'s definition of generic burglary. Rather, the phrase "dwelling house or any house, building, room or rooms therein" aligns with generic burglary's elemental requirement that the breaking or entering be of a "building or structure." *Frazier v. United States*, Nos. 2:04-CR-52-JRG-1, 2:16-CV-JRG, 2017 WL 1103400, at *3 n.4 (E.D. Tenn. March 23, 2017). As such, *Mathis* has no impact on the categorization of Petitioner's second-degree burglary conviction as a conviction for a violent felony under the enumerated-offense clause. *See Young v. United States*, No. 16–6702, 2017 WL 9471838, at *2

(6th Cir. Nov. 28, 2017) (holding that second-degree burglary conviction under Tennessee's pre-November 1989 burglary statute constitutes "generic" burglary and continues to qualify as a violent felony under ACCA's enumerated-offense clause).

Because Petitioner's second-degree burglary conviction still qualifies as a conviction for a violent felony within the meaning of the ACCA after *Johnson* and *Mathis*, he is not entitled to relief on this claim.

### 3. *Johnson-Mathis* Claim: Serious Drug Offense

Petitioner's next claim is that his two prior Tennessee convictions for possession of cocaine for resale no longer qualify as predicate ACCA convictions in light of *Johnson* and *Mathis* [Doc. 71]. Specifically, he argues that the Tennessee statute proscribing possession of cocaine for resale cannot be a predicate offense because it criminalizes conduct that does not meet the definition of a serious drug offense under the ACCA. Petitioner's claim is without merit.

As an initial matter, *Johnson* involved the definition of "violent felony" under § 924(e)(2)(B) and thus has no impact on the status of Petitioner's Tennessee conviction for possession of cocaine for resale as a serious drug offense under § 924(e)(2)(A)(ii). *See, e.g.*, *United States v. Darling*, 619 F. App'x 877, 880 n.5 (11th Cir. 2015) (noting that *Johnson* "has no bearing" on whether prior convictions qualify as serious drug offenses); *United States v. Jenkins*, 613 F. App'x 754, 755 (10th Cir. 2015) (deeming the *Johnson* decision "irrelevant" where ACCA enhancement stemmed from prior drug offenses).

Nor does *Mathis* dictate a different result. Under § 924(e)(2)(A)(ii), a "serious drug offense" is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . ." The Tennessee statute under which Petitioner was convicted provides that it is an offense to manufacture, to

20

deliver, to sell, or to possess with the intent to manufacture, deliver or sell, a controlled substance. Tenn. Code Ann. § 39-17-417(a). This Tennessee statute categorically aligns with the ACCA definition of a "serious drug offense."

Petitioner's argument that the Tennessee statute is broader than the ACCA definition of serious drug offense because it proscribes the "resale" of a controlled substance, and § 924(e)(2)(A)(ii) does not, is baseless. The ACCA provides that the term "distribute" means "to deliver" a controlled substance and, in turn, further defines "deliver" to mean the "actual, constructive or attempted transfer of a controlled substance." 21 U.S.C. §§ 802(8) and (11). It is beyond dispute that selling a controlled substance, and possessing with the intent to sell a controlled substance, falls within the ACCA definitions of "deliver" and "distribute"—so too then does the *resale* of a controlled substance, and the possession with the intent to resale.

In any event, courts have held, both before and after *Mathis*, that a violation of § 39-17-417 categorically is a conviction for a serious drug offense within the meaning of the ACCA. *United States v. Douglas*, 563 F. App'x 371 (6th Cir. 2014); *James v. United States*, 217 F. App'x 431, 440 (6th Cir. 2007); *see also United States v. Alexander*, 686 F. App'x 326, 328 (6th Cir. 2017).

Because both of Petitioner's prior Tennessee convictions for possession of cocaine for resale continue to qualify as ACCA convictions for a serious drug offense after *Johnson* and *Mathis*, he is not entitled to relief on this claim.

## D. Motion for Release from Custody

Also pending is Petitioner's motion for release on bail pursuant to 28 U.S.C. § 1657 [Doc. 72]. In this motion, Petitioner alleges that he is entitled to habeas relief in light of the *en banc*

decision of the Sixth Circuit Court of Appeals in *United States v. Stitt*, and that he therefore should be released on bail. This motion will be denied because *Stitt* is of no avail to Petitioner.

In *Stitt*, the Sixth Circuit held that a conviction under Tennessee law for aggravated burglary is not a violent felony for purposes of the ACCA. 860 F.3d at 860–61. Applying a categorical approach, the Court determined that the Tennessee aggravated burglary statute "sweeps more broadly than generic burglary," and thus cannot qualify as a violent felony under the enumerated-offense clause, because it encompasses vehicles and movable enclosures that fall outside the generic definitional sweep of "building or other structure." *Id*. at 857.

Here, however, Petitioner's prior Tennessee conviction is for second-degree burglary, not for aggravated burglary, and binding Sixth Circuit precedent holds that the elements of the pre-1989 Tennessee second-degree burglary statute are the same as or narrower than the elements of generic burglary as discussed above. *Jones*, 673 F.3d at 505; *Young*, 2017 WL 9471838, at *2. Unlike the Tennessee aggravated burglary statute, the Tennessee second-degree burglary statute under which Petitioner was convicted did not encompass vehicles or other movable enclosures— which *Stitt* held fall outside the sweep of generic burglary—but instead covered a "dwelling house or any house, building, room or rooms therein." Tenn. Code Ann. § 39-3-403 (1982). While Petitioner suggests that "dwelling house" should be interpreted to include locations such as "outhouse, barn, rooms, kitchens, laundry, smokehouse and dairy, when used as part of the whole and as necessary appendages to the house" [Doc. 68 p. 3], even accepting this interpretation, there is nothing within that definition of "dwelling house" which does not fall within the generic category of "buildings or structures."

Thus, the *Stitt* decision does not aid Petitioner and his motion for release on bond based on that decision [Doc. 72] will be **denied**.

## IV. CONCLUSION

For the reasons set forth herein, Petitioner's motions for leave to supplement his § 2255 motion to add *Johnson* claims [Doc. 68 and 71] will be **GRANTED**. However, Petitioner is *not* entitled to § 2255 relief on any of the claims raised either in his original motion or in the supplements. Accordingly, his § 2255 motion [Doc. 61], as amended to include the *Johnson* claims raised in his supplemental motions, will be **DENIED**. Petitioner's motion for release from custody on bail [Doc. 72] also will be **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Where a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings denying any of Petitioner's claims. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

**An order shall enter.**

/s/ _____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**